# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41099

United States Court of Appeals
Fifth Circuit

**FILED**
November 29, 2017

Lyle W. Cayce
Clerk

FELIPE DEL ANGEL; BELINDA RENEE GARCIA; ALBERTO GUERRERO; ANSELMO BARRERA; ARACELI MONTES, et al.

Plaintiffs–Appellants,

v.

LA JOYA INDEPENDENT SCHOOL DISTRICT; JOEL GARCIA, SR.; JUAN JOSE GARZA, also known as J. J.; JESUS AVENDANO, also known as Chuy; OSCAR SALINAS, also known as Coach; RICARDO VILLARREAL; ESPERANZA OCHOA, also known as Espi; JUAN JOSE PENA, also known as JJ; JOHNN V. ALANIZ,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:14-CV-303

Before WIENER, PRADO, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:*

Twenty-nine employees of the La Joya Independent School District sued the school district, the seven members of the school district's Board of Trustees, a Hidalgo County Commissioner, and one school administrator, asserting state

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-41099

tort and federal constitutional claims for employment political retaliation. All Plaintiffs alleged that they suffered adverse employment action because they did not support the political group to which all individual Defendants belonged. The district court granted Defendants' motion to dismiss all claims for failure to state a claim on which relief can be granted. We affirm.

## I

Twenty-nine plaintiffs (Plaintiffs), all of whom were employees of the La Joya Independent School District (LJISD) at the time relevant to their complaint, sued LJISD and nine named individuals, asserting state tort and federal constitutional claims for employment political retaliation. The following are factual allegations in the Plaintiffs' Third Amended Petition, which we accept as true for purposes of this appeal.

Defendant Joe Flores was County Commissioner for Hidalgo County Precinct 3 and the "de facto financial head of a political organization/faction known at 'Team Liberty'" at all times relevant to the claims asserted. Flores used his influence and control over western Hidalgo County politics, including the LJISD Board of Trustees and LJISD supervisory employees, "as a tool to punish the Plaintiffs for their failure to support Team Liberty in LJISD elections of interest" to Flores. Through Team Liberty, Flores has effectively controlled the LJISD Board of Trustees since 2012. Flores recruits and selects candidates to run for positions on the Board, and "[i]n return, the successful candidates use their positions as Board members to reward Team Liberty supporters, punish LJISD employees who do not support Team Liberty candidates, and further Flores' political and financial agenda."

The complaint alleged that each Plaintiff had "supported an opposition candidate, or failed to provide requested support to 'Team Liberty.'" It continued that "Flores and the other Individual Defendants took adverse employment action against all of the Plaintiffs, including termination,

2

demotion, transfer, reassignment, or refusal to hire, in retaliation for their protected activities." The complaint further alleged facts that describe Flores's allegedly illegal political activities not at issue in this lawsuit, and the complaint stated that "[w]ith respect to all of the employment actions taken against the Plaintiffs, either the Defendant Flores-controlled LJISD Board of trustees itself, [or] the LJISD Superintendent pursuant to the authority delegated by the Flores-controlled Board, took the complained-of action." The LJISD superintendent was not named as a defendant.

The complaint described the purportedly adverse employment actions taken with respect to all twenty-nine Plaintiffs and alleged, among other things, violations of the First and Fourteenth Amendments. The district court construed the complaint as raising claims for both individual and municipal liability under 42 U.S.C. § 1983, conspiracy to violate Plaintiffs' civil rights under 42 U.S.C. § 1985(3), state law civil conspiracy, and state law tortious interference with employment relations. The complaint described injuries including "mental pain and anguish because of Defendants' wrongful acts; injury to [Plaintiffs'] good name[s], character[s] and to their general and professional reputation[s]; embarrassment and humiliation; and loss of enjoyment of life."

Plaintiffs filed their lawsuit in state court, and Defendants removed to federal court. Defendant Joe Flores filed an unopposed motion to dismiss the causes of action against him pursuant to Federal Rule of Civil Procedure 4(m) for lack of service, which the district court granted.

After Plaintiffs amended their complaint at the district court's request, Defendants filed a motion to dismiss in part for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and in part for failure to state a claim upon which relief can be granted under Rule 12(b)(6), or, in the alternative, a motion for judgment on the pleadings under Rule 12(c).

No. 15-41099

In opposing the motion, Plaintiffs asked for leave to again amend their complaint. The district court granted the Defendants' motion, dismissing all of Plaintiffs' claims for failure to state a claim, and denied Plaintiffs leave to amend. This appeal followed.

## II

This Court reviews a district court's ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim de novo, applying the same standard as the district court.[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3]

## III

We first consider the claims against the individual Defendants under 42 U.S.C. § 1983, which establishes that anyone who, "under color of" state law, deprives another of rights granted by the Constitution is liable for that deprivation. "A section 1983 complaint must state specific facts, not simply legal and constitutional conclusions."[4] "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law.'"[5] "Well settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials

---

[1] *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 928 (5th Cir. 2002).

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (1955)).

[3] *Id.*

[4] *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

[5] *Monroe v. Pape*, 365 U.S. 167, 184 (1961) (quoting *United States v. Classic*, 313 U.S. 299, 325-26 (1941)), *overruled on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

4

may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury."[6]

"[T]he Supreme Court has consistently held that 'the First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved.'"[7] This doctrine also applies "when an employment decision is based upon support of and loyalty to a particular candidate as distinguished from a political party."[8]   A plaintiff asserting a First Amendment employment retaliation claim "must show that (1) an adverse employment action was taken, (2) speech involving a matter of public concern was uttered, (3) the employee's interest in speaking outweighs the employer's interest in efficiency, and (4) the protected speech precipitated the adverse employment action."[9] "Employer actions that can result in liability include more than just actual or constructive discharge from employment. Adverse employment actions can include discharges, demotions, refusals to hire, refusals to promote, and reprimands," as well as a transfer that is "equivalent to a demotion."[10]

With respect to the twelve plaintiffs that the district court concluded had failed to allege that political activity was "a substantial or motivating factor of any alleged adverse employment action," Plaintiffs argue that it was sufficient for the complaint to allege that "Defendant Flores used his influence and

---

[6] *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citations omitted).

[7] *Brady v. Fort Bend Cty.*, 145 F.3d 691, 702 (5th Cir. 1998) (citation omitted) (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990)).

[8] *Jordan v. Ector Cty.*, 516 F.3d 290, 295-96 (5th Cir. 2008) (quoting *Correa v. Fischer*, 982 F.2d 931, 935 (5th Cir. 1993)).

[9] *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007).

[10] *Sharp v. City of Hous.*, 164 F.3d 923, 933 (5th Cir. 1999) (citations omitted).

control" over the school board and school district supervisory employees "as a tool to punish the Plaintiffs" for their political activities.  But in addition to suffering from other defects, all of the allegations made with respect to these twelve plaintiffs either suggest no causal link at all or are conclusory: they do not allege what actions Flores or any Defendant took that would show that the alleged adverse employment actions were taken for political reasons.  The general statement that "[t]he Defendants intimidated the supporters of the rival political faction by promising that if the supporters did not join Team Liberty and follow Defendant Flores, or join Ramon Garcia's lawsuit, they would lose their jobs" also is not enough: it does not specify to whom such statements were made, or when, or by which Defendant, and it also does not state which plaintiffs actually were terminated pursuant to the threat.

With respect to the fourteen plaintiffs that the district court concluded "claim[ed] some form of retaliation but [did] not identify who took the retaliatory action" or "claim[ed] some form of retaliation but . . . allege[d] that the action was taken by non-defendant(s)," Plaintiffs point to a portion of the complaint that states that "Defendant Flores and the other Individual Defendants" took all of the adverse employment actions.  But based on a review of the specific allegations with respect to each plaintiff, that can only be true if the adverse actions are attributed to LJISD indirectly through the named individuals who did in fact take the actions.  The district court thus properly concluded that none of these fourteen plaintiffs stated a claim against any individual Defendant.  As for the remaining three plaintiffs, the district court correctly identified deficiencies in their claims.  All Plaintiffs' § 1983 claims against individual Defendants thus were properly dismissed.

No. 15-41099

## IV

We next consider the municipal liability claims under § 1983. Under *Monell v. Department of Social Services*,[11] a local government or government entity may be sued "when execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [for which] the government as an entity is responsible under § 1983."[12] In short, "[a] claim of municipal liability under Section 1983 'requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'"[13] However, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[14]

Official policy may arise out of either a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [district] . . . or by an official to whom the [district] ha[s] delegated policy-making authority" or a "persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [district] policy."[15] In the latter case, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-

---

[11] 436 U.S. 658 (1978).

[12] *Id.* at 694.

[13] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866 (5th Cir. 2012) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

[14] *Monell*, 436 U.S. at 691.

[15] *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (alterations in original) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)); *see also Sharp v. City of Hous.*, 164 F.3d 923, 935 (5th Cir. 1999) ("[A] custom or practice of deliberate indifference to rights need not be followed at every juncture in order to constitute 'tacit authorization or encouragement of wrongful conduct.'").

making authority."[16]  "Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees."[17]

Municipal liability under the First Amendment and § 1983 therefore could be established if the adverse employment actions were taken as part of a persistent and widespread practice of violating First Amendment rights, and if actual or constructive knowledge of such practice could be attributed to the Board of Trustees.  As the Supreme Court has stated, § 1983 "authorizes suit 'for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'"[18]

The district court dismissed Plaintiffs' municipal liability claims on the ground that the Board of Trustees itself did not effectuate the various adverse employment actions at issue.  The complaint alleges in a single sentence that "[t]he Individual Defendant board members and Flores met before the election and decided to take the adverse employment action complained of herein."  However, this statement is a conclusory allegation devoid of any particularities, and it comes at the end of a paragraph in the Complaint that does not pertain to any of specific adverse employment actions.  This bare allegation is inadequate to state a *Monell* claim.

Ten plaintiffs specifically allege that they were the victims of an adverse employment action due to the failure to support Team Liberty.  But none of these allegations provide factual support for the conclusion that an official or unofficial LJISD policy was the cause of the adverse employment action.  The allegations are based on speculation by LJISD employees or statements and

---

[16] *Eugene*, 65 F.3d at 1304.

[17] *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993).

[18] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 690-91).

actions by non-defendant employees who supported Team Liberty that cannot be attributed to a LJISD policy.

## V

The district court also construed the complaint as raising claims for conspiracy to violate federal civil rights under 42 U.S.C. § 1985(3).  A plaintiff suing under that statute must allege:

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.[19]

The district court held that Plaintiffs had failed to state claim under § 1985(3), because "there can only be a deprivation of the rights of a plaintiff when the action of the defendants is otherwise illegal,"[20] and here, "Plaintiffs have not alleged any illegal act separate and apart from the alleged deprivation of the First and Fourteenth Amendment rights."  But this court's recitation of the relevant legal standard in *McLellan v. Mississippi Power & Light Co.* explained that the alleged conspiracy must have violated some law "independent of section 1985(3)."[21]  As Plaintiffs correctly argue, they undisputedly have alleged as much: "[t]he alleged violation of the First and Fourteenth Amendment *is* a violation of some law independent of section 1985(3)."

Nonetheless, the district court determined that Plaintiffs' § 1985 claim also fails because they have not alleged membership in a class of persons whose equal protection rights may be violated pursuant to the statute, and this court's precedent on that question commands that result.  We have stated that "[i]t is

---

[19] *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994).

[20] *McLellan v. Miss. Power & Light Co.*, 545 F.2d 919, 923 (5th Cir. 1977).

[21] *Id.* at 926.

well-settled law that the discriminatory animus behind an alleged violation of section 1985(3) must be racially based or in some other way class-based."[22] Moreover, the Supreme Court has stated that it "f[ou]nd difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means," because "[t]o accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume."[23]  Plaintiffs' § 1985(3) claims were properly dismissed.

## VI

We next turn to the Plaintiffs' state law civil conspiracy claims.  In Texas, the elements of an actionable civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result."[24]  The district court dismissed Plaintiffs' civil conspiracy claims because the adverse employment actions allegedly taken against them—demotion, dismissal, extra duties, and so forth—are not "unlawful" in themselves.

"A civil conspiracy to be actionable must be one unlawful in itself or one accomplished by unlawful means; it consists of acts which would have been actionable against the conspirators individually."[25]  "There must be an agreement or understanding between the conspirators to inflict a wrong

---

[22] *Galloway v. Louisiana*, 817 F.2d 1154, 1159 (5th Cir. 1987).

[23] *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 836 (1983).

[24] *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

[25] *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963).

against, or injury on, another, a meeting of minds on the object or course of action, and some mutual mental action coupled with an intent to commit the act which results in injury."[26]  "[I]n short, there must be a preconceived plan and *unity of design and purpose*, for the common design is of the essence of the conspiracy."[27]  Thus, it is not dispositive that adverse employment actions would not be unlawful if taken without improper intent.  Plaintiffs could have stated a claim for civil conspiracy if they alleged a "meeting of the minds" with respect to the reason for the adverse actions—that is, retaliation.[28]

The complaint states that "Individual Defendants, and others reached an agreement to retaliate against the Plaintiffs for exercising their rights of political affiliation" and that "Individual Defendants and others, acting through the LJISD Board of Trustees and/or the Superintendent, acted in conformance with this plan by terminating the employment of certain Plaintiffs."  It also states that "[t]he Individual Defendant board members and Flores met before the election and decided to take the adverse employment action complained of herein."  These allegations are conclusory and are not enough to state a claim that any particular Defendants conspired to use their influence as members of the Board of Trustees to effectuate adverse employment actions against LJISD employees.  Additionally, because no Plaintiff has properly stated a claim for retaliation against any individual Defendant, each civil conspiracy claim must also fail for the same reason: no

---

[26] *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968) (quoting 15A CORPUS JURIS SECUNDUM CONSPIRACY § 2).

[27] *Id.* (emphasis added) (quoting 15A CORPUS JURIS SECUNDUM CONSPIRACY § 2).

[28] *See, e.g.*, *Vacca v. Farrington*, 85 S.W.3d 438, 441-42 (Tex. App.—Texarkana 2002, no pet.) (section 1983 conspiracy claim stated where prison officials allegedly "conspired in their efforts to retaliate against [plaintiff] for his initiation of a federal complaint"); *Rennels v. NME Hosps., Inc.*, 965 S.W.2d 736, 740 (Tex. App.—El Paso 1998) (civil conspiracy claim stated based upon retaliation claim against hospital officials), *aff'd sub nom. NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142 (Tex. 1999).

No. 15-41099

Plaintiff has alleged that an adverse employment action was taken against him or her by an individual Defendant with a retaliatory purpose. Each thus has failed to allege at least one of three necessary elements of a civil conspiracy claim: an overt act, proximate causation, or damages.

## VII

Finally, we address Plaintiffs' state law tortious interference with employment relations claims. A claim of tortious interference with employment relations must allege willful and intentional interference with an employment arrangement that proximately causes damage to the plaintiff.[29] To succeed on such a claim, a plaintiff must show "that the defendant acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests."[30] "[A] party cannot tortiously interfere with a contract to which he is already a party"[31] unless an "agent acted willfully and intentionally to serve the agent's personal interests at the [principal's] expense."[32] Additionally, "if a corporation does not complain about its agent's actions, then the agent cannot be held to have acted contrary to the corporation's interests."[33] The latter rule may apply to public employers as well as private corporations.[34]

The district court dismissed all of Plaintiffs' tortious interference claims, both on the ground that no Plaintiff stated a claim for retaliation by a Defendant and because any theory of interference by an agent of LJISD would

---

[29] *See Holloway v. Skinner,* 898 S.W.2d 793, 795-96 (Tex. 1995).

[30] *Id.* at 796.

[31] *Hood v. Edward D. Jones & Co.,* 277 S.W.3d 498, 502-03 (Tex. App.—El Paso 2009).

[32] *Powell Indus., Inc. v. Allen,* 985 S.W.2d 455, 457 (Tex. 1998).

[33] *Id.*

[34] *See, e.g., Newman v. Kock,* 274 S.W.3d 697, 703 (Tex. App.—San Antonio 2008, no pet.) (rejecting tortious interference claim brought by tenured professor against state university officials, because "there [was] no evidence suggesting that [defendants] would personally benefit from [plaintiff's] absence, nor was there any evidence that [the university] complained or otherwise disapproved of [defendants'] actions").

require both a claim that the agent acted "willfully and intentionally to serve the agent's personal interests at [LJISD's] expense" and a complaint by LJISD itself.[35]

As with Plaintiffs' civil conspiracy claims, the tortious interference claims fail because no Plaintiff has alleged that a Defendant took retaliatory adverse action against him or her. Additionally, although Plaintiffs allege that LJISD officials exceeded the scope of their authority for personal reasons, the Board of Trustees has not complained of their actions. Tortious interference arises when the will of the individuals properly in control of an entity has been thwarted and thus the entity itself has been harmed. But here, LJISD has suffered no direct harm as a result of any improper actions taken by Defendants, and its representatives have made no objection. Accordingly, the tortious interference claims fail.

Because Plaintiffs have not stated claims under § 1983 against any individual Defendant and have not stated any state law tort claims, we need not address whether Defendants are entitled to qualified or statutory immunity, or whether Plaintiffs' state law claims are barred by a failure to exhaust state administrative remedies.

## VIII

Plaintiffs ask that we compel the district court to grant them leave to amend their complaint. Except for a single amendment prior to the filing of a responsive pleading, "a complaint may be amended only by leave of the district court, and, while such leave is to be freely given when justice so requires, the decision is left to the sound discretion of the district court and will only be reversed on appeal when that discretion has been abused."[36] The district court

---

[35] *Powell Indus.*, 985 S.W.2d at 457.

[36] *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).

13

may consider a number of factors in deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[37]

In responding to Defendants' motion to dismiss below, Plaintiffs requested leave to "re-plead their claims in compliance with [Federal] Rule [of Civil Procedure] 7(a)" in the event that the district court granted the motion. Plaintiffs had already amended their original complaint twice—once in state court and once on the district court's order—and they did not provide a justification in their response to Defendants' motion to dismiss for why leave to amend further was necessary, nor did they elaborate as to the additional facts they would assert in a third amended complaint. Moreover, as Defendants point out, this court on multiple occasions has found no abuse of discretion where a district court declined to allow a third opportunity to amend a complaint.[38] The district court did not err by declining to do so here.

\* \* \*

We AFFIRM the district court's judgment dismissing all claims.

---

[37] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

[38] *See, e.g., Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006) ("Plaintiffs had three attempts to produce a sufficient complaint. The [district] court dismissed the complaint and denied leave to amend only after the third insufficient attempt.")).